# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | No. 96 CR 291-12 |
| v. | ) | |
| SIGIFREDO PEREZ, | ) | Magistrate Judge Cole |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In 1996, Mr. Perez was charged, along with twelve other defendants, in a 26-count indictment with conspiracy to distribute in excess of 1000 kilograms of cocaine from October 1995 to May 1996, in violation of 18 U.S.C. §§841(a)(1)(A), 843(b), 846 and §2 and with related charges.[1] In December, 1996, Mr. Perez's case was transferred by Executive Committee order to the fugitive calendar. [Dkt. # 579]. Since 1995, Mr. Perez claims to have been living in Mexico, having moved from New York to care for his sick mother. (Pretrial Services Report at 1). He was recently arrested attempting to clandestinely enter the United States. On March 9, 2011, Judge Manning ordered him detained until further order of court. [Dkt. # 593]. On March 21, 2011, I ordered him to be detained. That order was entered without objection by Mr. Perez, but with the understanding that he could seek a bond hearing at a future date that he deemed appropriate. [Dkt. #598]. Mr. Perez has now filed what is captioned, Motion For Pretrial Release, seeking, pursuant

---

[1] If convicted on each of the counts, Mr. Perez faces a minimum mandatory ten years and a maximum sentence of life in prison and a $4 million fine on each of Counts One and Fourteen and a maximum of four years in prison and a $250,000 fine on each of Counts Sixteen and Seventeen. In total, Perez faces a sentence of a minimum mandatory ten years and a maximum of life in prison and a fine of $8.5 million.

to 18 U.S.C. §3145, to revoke the March 21, 2011 order of detention.[2]

The facts surrounding Mr. Perez's arrest are critical to disposition of the Motion. On January 25, 2011, he was stopped by a United States border patrol agent while attempting to enter the United States near Jacumba, California, more than 25 miles from the legal port of entry from Mexico at Tecate, California, and a few hundred yards from the United States-Mexico border. He and his three companions were wearing what are called "booties," which are cut pieces of blanket attached to shoes. The government represents that they are used to prevent telltale footprints, and Mr. Perez's counsel has offered no other reason why Mr. Perez would have been wearing them.

Mr. Perez told the border patrol agent that he entered the United States without proper documentation, because, according to Mr. Perez, he was a Mexican national, born in Tecalitan, Jalisco, Mexico. In fact, Mr. Perez was, he now contends, actually born in New Rochelle, New York in 1972 and is an American citizen. He contends that he could not produce a passport or other identifying documentation because of a burglary that occurred at his home in Mexico in February 2010. For purposes of resolution of the Motion, the government has conceded that Mr. Perez is an American citizen, that a burglary did occur, and that his American passport and related documents were stolen.[3] And for purposes of the Motion, I proceed on the basis of these limited concessions.[4]

---

[2] Since the defendant did not request a bond hearing in March 2011, the current motion is more appropriately viewed as one for initial release pursuant to 18 U.S.C. §3142. And the factors that govern such motions will be applied here.

[3] At the hearing on the Motion, Mr. Perez's counsel introduced what purports to be a xerox copy of a birth certificate issued by the state of New York, reflecting Mr. Perez's birth in New Rochelle in 1972 and what, in effect, is a police report in February 2010 to Mexican authorities, containing an itemization of what was stolen.

[4] Other statements in the Motion the government does not concede. *See* ¶¶6-14, 16, 17. And I do not accept them as true. Some of the statements are not relevant such as those relating to Mr. Perez's good deeds in Mexico(¶ 14), and almost all are unsupported. Yet, it is basic that unsupported statements in briefs are not
(continued...)

The defendant's proof of citizenship and of the burglary at the hearing on the Motion do not bolster his case. Quite the contrary. As the government has argued, the only reasonable inference to be drawn from Mr. Perez's lies to the border patrol agent is that he was aware that he had been indicted and to avoid the certain arrest that would follow on the heels of the inevitable computer inquiry by the agent in response to a claim of American citizenship, he lied, hoping to be sent back to Mexico immediately. There is no other plausible explanation for the falsehood about Mr. Perez's nationality. The only explanation offered at the hearing today was that Mr. Perez is perhaps not a very intelligent fellow, having completed only a year of high school, and thus would not have known that he should have gone to the American Embassy for another passport. Apart from its implausibility, that argument does not begin to explain the reason for lying to the border patrol agent other than to prevent arrest on the outstanding drug charges.

Intelligence is not linked to truth-telling, at least not when it involves one's place of birth and citizenship. Had Mr. Perez been motivated by any other than a dishonest and obstructive purpose, he would have told the agent he was an American citizen, given his date and place of birth, and explained that his passport had been stolen the year before and that he reported it to the police. That is not only the natural impulse of someone who had nothing to hide, but was the only thing that could have prevented either arrest, or worse, being immediately sent back to Mexico, whose adverse conditions the Motion unsupportedly claims impelled his return to the United States. (Motion, ¶16).

---

[4](...continued)
evidence and do not count. *See e.g., Woolard v. Woolard,* 547 F.3d 755, 760 (7th Cir.2008); *United States v. Stevens,* 500 F.3d 625, 628–29 (7th Cir. 2007); *Campania Mgmt. Co. v. Rooks, Pitts & Poust,* 290 F.3d 843, 853 (7th Cir.2002); *Ho v. Donovan,* 569 F.3d 677, 682 (7th Cir. 2009). Additionally, while I can consider hearsay statements by the defendant (or anyone else), I am not bound to uncritically accept those that are not shown to be reliable. *Cf. Mister v. Northeast Illinois Computer RR Corp.*, 571 F.3d 696, 699 (7th Cir. 2009)(even non-hearsay can be excluded if not sufficiently reliable).

"[H]onesty of purpose prompts frankness of statement...." *Crosby v. Buchanan*, 90 U.S. 420, 454 (1875). False exculpatory statements – especially those in this case – are evidence of consciousness of guilt. *United States v. Shorter*, 54 F.3d 1248, 1260 (7th Cir. 1995); 1 J. Weinstein & M. Berger, *Weinstein's Evidence* 401 [10], at 401-70 to 401-71 (1986). And while Mr. Perez's encounter with the border patrol agent is circumstantial evidence, it is not to be discounted. Indeed, this is one of those cases where circumstantial evidence is more certain, satisfying and persuasive than direct evidence. *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003); *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960). *Cf., Branion v. Gramly*, 855 F.2d 1256 (7thCir.1988)("The evidence was circumstantial, but what circumstances.")

Judges have no way of crawling into peoples' minds; they act on the basis of external signs, Posner, Overcoming Law, 276 (1995), and the state of a man's mind must be inferred from the things he says or does. Courts and juries every day pass upon knowledge, belief and intent, having before them no more than evidence of words and conduct, from which, in ordinary human experience, mental condition may be inferred. *See American Communications Ass'n, C.I.O., v. Douds,* 339 U.S. 382, 411 (1950); 2 J. Wigmore, Evidence, §§ 244, 256 et seq. (3d ed.1940). Here, Mr. Perez's lies to the border agent are compelling evidence of his knowledge of the outstanding drug charges.

This conclusion is reinforced by the absence of anything in the Motion or in Mr. Perez's supporting affidavit denying that he has long known of the outstanding charges or making any attempt to explain the lies to the border patrol agent. Under the circumstances of this case, that silence is telling. Given the importance of the question of whether Mr. Perez knew over the past 14 years that he had been charged in a drug conspiracy – and remained in Mexico to avoid arrest – or

4

was, as he now claims, just a farmer living in Mexico who came to the United States to escape the "escalating" "violence in the rural areas" and to find "better working conditions in the United States," (*Motion* at ¶16), one would have expected a statement in Mr. Perez's affidavit that he had no knowledge until his current arrest on the outstanding drug charges. Learned Hand's observation in *United States v. Paglia,* 190 F.2d 445 (2nd Cir. 1951) makes the point:

> So it appears that the crime charged in Counts Five and Ten was conceded; that Paglia was then present in court; that he heard all that his attorney said about him, which the attorney could only have got from him; and that he said not a word in contradiction. *Furthermore his affidavit on this very motion contains not a syllable of contradiction*.

*Id.*, at 447-448 (Emphasis supplied). *Cf.*, *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008)('The [affidavit's] silence is deafening.").

In sum, the available evidence supports the government's contention that Mr. Perez did know about the charges against him, and that he chose to live in Mexico with his family and thus may fairly be characterized as a fugitive. Mr. Perez's 14-year status as a fugitive and his willingness to lie to government agents to prevent arrest are compelling evidence that he should continue to be detained. There is simply no evidence to overcome the rebuttable presumption that there is no condition or set of conditions that will reasonably assure the defendant's appearance at trial or assure the safety of the community. 18 U.S.C.§3142(e)(3)(A). While only slight evidence is required to overcome the presumption, none is apparent here.

But even if the presumption has been overcome, the factors under §3142 that must be assessed in determining whether a defendant should be released or detained pending trial all militate against release in this case. As the government has explained in its response to the Motion, the evidence against the defendant is quite substantial, involving as it does documentary evidence

pointing directly to the defendant, as well as recorded conversations and surveilled meetings between Mr. Perez and other conspirators relating the progress in the sale of the narcotics, the collection of proceeds, and meetings among the conspirators to move the proceeds within the organization.

The characteristics of the defendant also support detention. Mr. Perez has absolutely no meaningful ties to this or any other district. He has lived as a fugitive in Mexico for almost a decade and a half, and his family continues to live there. He speaks fluent Spanish, and apparently no or insufficient English, as evidenced by his need for an interpreter at the hearing. He is facing very substantial jail time and fines, and has demonstrated his willingness to lie to government officials to prevent detection and arrest. In short, "'under a realistic appraisal of psychological tendencies and human weakness,'" *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 252 (1980), Mr. Perez has every incentive to flee and none to stay. There is no condition or set of conditions that will reasonably assure his attendance at trial. The Motion for Pretrial Release From Custody [#605] is Denied.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 5/25/11